We will proceed with the case of John Doe No. 5 and John Doe No. 6 v. Miami Dade County Good morning and may it please the court. My name is Daniel Tilley and I represent John Doe's 5 and 6 who are the remaining plaintiffs at trial. Plaintiffs put on extensive evidence that the county challenged on the extreme risks that being forced into homelessness under the ordinance placed on plaintiffs' health and safety. During the pendency of this appeal, John Doe's 4 and 7 unfortunately passed away while homeless. The question on appeal is whether there was implied consent to try an as-applied issue and whether there would be any prejudice to the county for the court to consider that relief. The answers are that yes, there was implied consent and no, there is no prejudice. In its brief, the county never discusses the AFSCME case where this court approved the narrowing of the remedy from facial to as-applied. In that case, the state noted that the complaint only mentioned facial relief, and the state also complained that AFSCME had expressly disavowed seeking as-applied relief during discovery. The 11th Circuit found this quote, unconvincing. Why? They acknowledged that typically you need to file a Rule 15 motion to add a new claim, but they said that AFSCME quote, was not stating a new claim, only clarifying the scope of its desired remedy. That's why the county's argument falls flat. The county said at trial that quote, a facial challenge and as-applied challenge are vastly different claims. Close quote. And the district judge denied the motion on that basis. But we know that's wrong as a matter of law because they're not even different claims at all. The plaintiffs here merely sought a narrower form of relief. What's more, the county always had a laser-like focus on the plaintiffs, vigorously pursuing the details of their lives. In discovery, plaintiffs were asked to disclose and did disclose their rental history, employment history, medical history, criminal history. The county deposed each plaintiff on each of these matters, asking questions about recidivism risk, sex offender treatment, rehabilitation, the underlying offenses, decades worth of evidence in some instances. Far from ignoring the plaintiffs to focus on defeating a facial challenge through the circumstances of some other former sexual offender, the county thought it best to focus on plaintiffs' individual circumstances instead. That's the consent. The county's focus on the plaintiffs as the vehicle for defeating a facial challenge, and that shows lack of prejudice too. Now, the district judge's finding on prejudice was focused on the fact that the motion was filed on the last day of trial. That standing alone is insufficient as a matter of law to deny a motion to conform the pleadings to the evidence because Rule 15 specifically contemplates that such motions could be made even after judgment. And the district court cited no specific other ground for prejudice. He just said he agreed with the county. He said they were exactly correct. But the county offered no credible case for prejudice either. The county spends a lot of time trying to convince the court that plaintiffs were clearly just bringing a facial challenge all along. And it's a bit beside the point, but let me just say that I don't think that evidence is as clear as the county suggests because any statements by plaintiffs to that effect were literally years before the filing of the Second Amendment complaint or after the close of discovery following the Second Amendment complaint. But again, that's actually all besides… Can I slow you down just a second to ask a question? Sure. I'm trying to figure out if your argument really is that the district court erred in denying your motion to amend or instead that under AFSCME, or however we're going to use that acronym, it's a tough one, you didn't have to move to amend at all. Well, I'm not sure it was strictly required for plaintiffs to file a Rule 15b-2 motion since the pleadings do not unequivocally rule out an as-applied challenge. And the presumption is that challenges are as-applied unless they're explicitly labeled facial. But particularly since the district judge flagged the issue, it certainly was procedurally appropriate for us to file the motion to make clear to the judge that this is something that really was litigated all along. The reason that I ask is that as I read the blue brief, the blue brief, you know, the heading is, you know, that the district court… I don't have it right in front of me, but the district court erred in denying your 15b-2 motion to amend. And you do mention the AFSCME case in a couple of places, but it seems to me that, like, you're deploying it there so as to indicate that as-applied and facial challenges sort of in a gestalt kind of way are not really all that different, and therefore there was implied consent, and therefore there was no prejudice. And then in the reply brief, there seems to have been some awakening, and instead you're really sort of arguing AFSCME really as a standalone basis, and you're saying, you know, in effect, we never really had to move to amend this thing anyway because this isn't even a different claim, and we didn't have to fold anything new in, and it's just a narrower form of relief. And those two things just seem different to me. Well, I think it goes to the implied consent, and it's because, you know, stepping back for a moment, you know, the county's theory is that Salerno provided the standard of this case, and just to be clear, we said that Smith v. Doe supplied the standard. The county said that the court agreed with the county at trial, which is true, but then in the decision, the court relies on Smith v. Doe and not Salerno. But under the county's theory of the case, they say it's the Salerno case, and that plaintiffs would have to show no set of circumstances in which the ordinance could be constitutionally implied. In other words, all the county would have to do is show one set of circumstances in which the ordinance can be constitutionally applied. And if plaintiffs were to establish an as-applied relief, that is by definition not a set of circumstances in which the ordinance can be constitutionally applied. So it is by defeating what would be sufficient to establish an as-applied challenge that they could succeed in defending against a facial challenge. So in their effort to defeat a facial challenge, it requires them to defeat an as-applied challenge for the plaintiffs if they chose to focus on the plaintiffs, which they did. Now, they wouldn't have had to done that. They could have ignored the plaintiffs altogether and just relied on the officer's testimony that a couple folks showed up at the registration office in nice cars and said, well, case closed, we win the facial challenge under their theory. Of course, we argue it's a different theory that applies. But the point is that the as-applied relief was always a part of the case the way they litigated, because they always had a laser-like focus on the plaintiffs, asking them questions about the underlying offense, asking about housing, about their acceptance of responsibility, their housing search, their rehabilitation. All of those questions were a part of the depositions. They were a part of the trial testimony, trial day two. They asked those five and six about their crime and about their pleas. They brought them back on days four and five. On day three, they asked our health expert, Dr. Greer, who talked about the health impact on homelessness. They asked them about the specific diagnoses and symptoms of the plaintiffs. Day four was the most detailed inquiry into the plaintiffs, talking about the charges, specific things they did with whom and what they did, the work specifics, the rental specifics. So it was always focused on the plaintiffs themselves. And so that's the consent, that it was always a necessary part of the case by their choice. So it's not what plaintiffs said in any moment. It's about what defendants did. It's about how they crafted the case, and they chose to try to defeat a facial challenge by doing what they would have to do with the plaintiffs, which is necessarily to defeat an as-applied challenge. May I ask, this is Beverly Martin, you talk about how they focused on the individual plaintiffs. Was there any evidence developed about the likelihood of recidivism for Mr. Doe, number five, and Mr. Doe, number six? They asked, they did request discovery on all, yes, they sought and obtained discovery. I mean, we listed in the brief around page 34 the various interrogatories, and just on interrogatory 16, they said they asked for all individuals who have provided sex offender treatment to you, all qualified practitioners that have created a safety plan or risk assessment relating to you, all doctors, therapists, other qualified practitioners that have examined your mental or physical health. So they asked for all that information. They obtained all of that information. So it's not, although they talk about, you know, the prejudice they list in their brief are, yes, we would have asked about sex offender treatment, individual recidivism. It's a bit odd. One, I'll point out, that's not, quote, vastly different. It's just more of the same. But two, they obtained, they sought and obtained all of that information. Same with the health records. And the final statement of prejudice, they would have devoted more time during trial to cross-examination, which is, again, not vastly different. It's just more of the same, and they had that opportunity. Indeed, we filed the motion during our case in chief. So it's really, you know, they sought and obtained this information, and they had no incentive to go into these issues to any depth except for the purpose of defeating what would constitute an as-applied challenge, because it is only through defeating what would constitute an as-applied challenge that they would have established a set of circumstances in which the ordinance could be constitutionally applied, which is what they would have to show to defeat the facial challenge. So the as-applied challenge was always front and center when they went into the very evidence that they're now saying they would have sought more of. What about just the fact that you repeatedly, both before and after the Second Amendment complaint, swore off an as-applied challenge? And this goes, I think, really to your 15B argument, less than it does to the extent you have one to your standalone AFSCME argument. But what about the fact that, you know, you just said time and time and time again, you just swore it off. You said, we're not pursuing an as-applied challenge. Sure. Well, and I'll just reiterate before I answer that, that I don't think it's relevant under AFSCME, which is where there was also expressed as a vow, but just entertaining the notion. You know, if we get, you know, we can just look at the specific instances they cite, and I'm looking at page 28 on their brief, which is PDF page 36. Starting at number eight, you know, they're careful not to list dates on these statements, because the dates are relevant. So number eight, docket entry 76, that's a hearing where we say it's a facial challenge. That's June 2015. The next entry is two and a half, almost two and a half years later. That's the filing of the Second Amendment complaint. So two and a half years later, after it's come back from the 11th Circuit, we dropped the organizational plaintiff. We had additional plaintiffs, different complaint, different claims, or we still had the ex post facto claim, but the other four claims had been dropped. Two minutes, counsel. Two minutes. Thank you. So that's the two and a half years later, that statement. The next entry is their answer where they say, docket entry 91, it includes affirmative defenses that bear only an official challenge. I truly don't know what that means, because the legal elements, of course, in Smith v. Doe are the same. Moreover, it's just not true in that answer. They say plaintiffs lack standing. They say plaintiffs are barred by laches. They say plaintiffs, any harm is caused by their own conduct. Those are obviously specific to the plaintiffs. The next entry is ten months later. That's their motion for summary judgment where they mention official challenge, and then discovery closes. And there's no statement by plaintiffs still after that fact. So even if we're really going to get into the weeds on who said what when, there was no statement during the operative period, and that came almost two and a half years later after there was any other statement. Let me just make clear. I've got the chronology. Is it true or not that on October 18, 2018, at a calendaring call, the court asked you, or whoever it was who was representing the plaintiffs at the time, it's official challenge only, right? And lawyer for the plaintiff said yes. Yes, that's true. And the reason why that's not relevant is because for a couple of reasons. Of course, the Rule 15b-2 motion only comes into play at trial or after trial. And moreover, I'll just return to the argument I said before, that there's no prejudice and there's implied consent because they chose to bring the plaintiffs into this. And, again, whether or not there's an as-applied challenge, they have to defeat an as-applied challenge in order to defeat the facial challenge. So we could have expressly just about, you know, until the end of trial saying there's no as-applied challenge. That wouldn't change the fact of what their conduct was. Their conduct required them to defeat an as-applied challenge in order to defeat a facial challenge because only through that could they show a set of circumstances through which the ordinance could be constitutionally applied. So I guess your point is just given the nature of the relationship between an as-applied challenge and a facial challenge, the lawyer for the plaintiff here could have just, I guess, lied, not necessarily lied, I suppose, but either lied or misstepped. Every day of the proceedings, before the amended complaint, after the amended complaint, during trial, after trial, and it just would not matter. Nothing the plaintiff's lawyer could say could possibly give away the as-applied challenge. It's simply physically impossible. Well, of course, it's improper to lie or mislead. I'm happy to answer the question. Feel free to finish up. Okay. Of course, it's improper to mislead, but the point really is about the – and I'm not suggesting that we didn't say it was a facial challenge, obviously, but the focus is on how the case was litigated. It's on how the case was litigated. Was the case litigated in a way that included an as-applied challenge? And what I'm arguing and what I think you understood from what I was saying is that it is necessary for them to defeat an as-applied challenge in order to defeat a facial challenge. That's the point, not justifying any certainly inappropriate conduct by anyone, and nor did we believe – we were not intending to mislead anyone. And, of course, we thought we were entitled to facial relief, and we were incorrect in that assumption based on what the district court said. I totally get your point about the logical relationship between the two claims, and I find it pretty compelling, actually. But you understand my concern that as an officer of the court, there's just – I don't know, there's something a little jinky about continuing to represent the court and to your opponent that we're only pursuing this relief, not that one, over and over and over, and then sort of sub silentio, knowing all the while, well, don't worry, because when we get to the end of the road, we'll always have the as-applied challenge. Well, no, we didn't. I mean, the reason we filed their motion is because specific comments in day four, I believe, of the trial where we believed – essentially, the court was suggesting that it would be a good idea to add an as-applied challenge. It certainly was not any sort of belief that we could get away with something at a later time. That would be improper, and, of course, a sense of fairness underlies, I think, all the federal rules of civil procedure. The question is how is that mediated through doctrine, and the doctrine talks about consent and prejudice. That's why I've been focused on how the case was litigated. Got it. Thank you. Thank you. Good morning, Your Honor. As inmate of the court, Michael Valdez on behalf of Miami-Dade County. The federal rules of civil procedure are designed to avoid surprise and allow the parties to have proper and timely notice of the claims and arguments at issue in any case. Once a case proceeds to trial, it is envisioned that the parties will resolve the claims and disputes that they have spent considerable time, often years, preparing for. For that reason, this court has held that under Rule 15b, a party can only amend their pleadings during or after trial when the other side has consented to the introduction of that issue and doing so would not prejudice the other side. In this case, plaintiff's counsel advised the court in Miami-Dade County that its only intention over more than four years of litigation was to pursue a facial ex post facto claim. And in that same vein, plaintiff also expressly stated that they sought relief that would not be limited to the individual plaintiffs, but rather would extend to every individual who committed a sexual offense against a child 15 years or younger, prior to the enactment of the county's residency restriction. Notably, I do not base my characterization of plaintiff's intent on a single statement or on an assumption gleaned from plaintiff's silence. Instead, as the record citations in Miami-Dade's answer brief on pages 6-18 and 27-29 make clear, this very issue was discussed in no fewer than five hearings and mentioned in no less than 13 filings over the span of four years. At every opportunity, the plaintiffs unambiguously stated that they exclusively sought to pursue a facial claim. Based on those representations, Miami-Dade County crafted its defenses, conducted discovery, and prepared for trial with the justified expectation that the only issue to be tried was whether the plaintiffs met the heightened standard for facial relief under the U.S. Supreme Court's decision in Salerno. During trial, plaintiffs made the strategic decision that in their view, the burden for facial relief could be met through testimony from the individual plaintiffs about their circumstances. And they asked the district court to hear that testimony on those terms. Then, on the final day of a week-long bench trial, after that testimony had been offered in support of a facial claim and after those witnesses had already been cross-examined, plaintiffs advised the court for the first time in this entire case that they wanted to change the focus of this case to an as-applied challenge. In addition, plaintiffs asked this court to find that Miami-Dade County was on notice of this change, even though plaintiffs expressly disavowed any desire to proceed with an as-applied challenge at every turn. The district court denied that last-minute request based upon, first, a proper application of this circuit's precedent in WESCO manufacturing and others, which hold that evidence relevant to a properly pleaded issue cannot put a party on notice that a new issue has entered the case through implied consent, and second, a finding that an amendment at this late stage of the litigation would be prejudicial to Miami-Dade County. That decision was not in the discussion. This is Judge Newsom. Can I ask you a question? Notably, don't even cite. You don't cite AFSCME in your red brief. What do you do with that case? I think it's important to note what the ultimate holding in AFSCME was, and I do think that there's some distinction in the way that the court ultimately treated AFSCME. While the court discussed kind of the fluid nature between the facial versus as-applied claims, ultimately what the court held was the district court's characterization of a claim as as-applied was in fact facial, and it reversed the district court's injunction, which claimed to have been providing as-applied relief when in fact it was facial relief, and it needed to have complied with the standards under Salerno. Importantly, Your Honors, I think even the AFSCME decision recognizes, and I point to its citation when it discusses the Sixth Circuit decision in Sputnik, and it's a dissenting opinion from one of the Sixth Circuit judges, but it's cited approvingly by the majority in AFSCME. It draws a distinction in cases where a party expressly disavows bringing the as-applied claim, and so I do believe that AFSCME is distinguishable in these grounds, and it was plaintiffs who invited and asked that this case be analyzed under the rules, the standards in 15B by filing that motion, and I think, Judge Newsom, you were exactly correct that the argument that AFSCME now can be interpreted to find that those claims are one and the same was only raised in the reply brief, and we still haven't had an opportunity to respond to that issue. Well, let me ask you this, though, because you said, and maybe I haven't read AFSCME quite closely enough, but there's a dissenting opinion in the Sixth Circuit that is cited with approval in AFSCME that says there's an exception to the proposition, to the principle that an as-applied brings with it a facial or a facial brings with it an as-applied where it's been expressly sworn off, but doesn't AFSCME cite to Citizens United where, in fact, there the party had sworn off a facial challenge and the Supreme Court said no matter? It talks about the nature of the claim and the court's ability to sash and release, but here I think it's also important to note we still don't really know what the nature of the plaintiff's as-applied claim would actually be. On the last day of the trial, they find a motion saying we assert an as-applied challenge, never expressing what the contours of the as-applied challenge would be, never expressing what the specific circumstances unique to these plaintiffs that would generate an as-applied challenge, and I think it goes to the concern Citizens United and AFSCME was about the discretion that the district court had to sash and release based on evidence that had been presented. Here, the plaintiffs didn't tell the court what the nature of its as-applied relief was and then they asked the court and the parties and the defendant to figure that out for themselves. Mr. Valdez, this is Judge Watkins. I want to get back to the rule in connection to what you just said. You keep using the word issues, and in 15b, it's not causes of action or theories or claims. The rule uses the word issues. I understand you to be saying that the issue of relief is different in an as-applied challenge than in a facial challenge, and doesn't that fall right within 15b-1 for your position is that the issues were not tried, whether it's a different cause of action or not or even a different theory. What do you say about the use of the word issues in the rule? I'm looking to 15b-1, Your Honor. This goes, I believe, to the prejudice that's facing the county. We have been dealing with these last-minute filings that have been brought by plaintiffs. They assert a claim under 15b-2 that they want the issue to be found under the implied consent doctrine, and they want to amend the complaint on those grounds. We respond to those arguments and to those claims, and it appears, at least from the county's perspective, that this continuously becomes a moving target, whereby there are these last-minute awakenings as to better arguments that could have been raised but weren't raised in the first instance, but the county was expected to also argue and defend against those claims. I understand that the issue of relief could, in fact, be distinct, but I believe it's important to note that that was not relief that the plaintiffs sought until the last day of the trial, and it would have been prejudicial to the county to shift the focus to that type of relief without giving the county the opportunity to cross-examine the individuals whose testimony was supposed to be relevant for that type of relief on those issues for the notice of the county to be aware that this was a potential relief that could have been sought. There's other evidence that we believe we would have either tried to obtain through discovery or tried to elicit a trial that would have been relevant to those claims and to that type of relief. Mr. Valdez, this is Beverly Martin. I wanted to ask you about some of the findings that the district court made with regard to the specific plaintiffs in this case. My understanding is that the district court basically made a finding that this ordinance does not cause homelessness. Have I got that generally right? Yes, Your Honor. When I looked at the evidence, it seemed to me that Mr. Doe No. 5, there was evidence that he was able to live with his family but not for the ordinance. Mr. Doe No. 6, he could have lived with friends, but the ordinance interfered with that. With regard to those two plaintiffs, the finding of that was not right, was it? Respectfully, Your Honor, I do believe the court made the proper finding because I believe that under the Supreme Court standard in Smith v. Doe, the analysis isn't whether or not the plaintiffs had an option, but whether their homelessness was uniquely attributable to the application of the ordinance. Here, there was evidence as to both John Doe No. 5 and 6 that they had found compliant housing in the past. They had secured compliant housing. They had found housing that there's no obligation that the plaintiffs have to be allowed to reside with a family member if they were able to find compliant housing. Here, the evidence indicated that they had, and for a variety of reasons, either those opportunities fell through or they were evicted by landlord decisions to not rent to them any further. Those were factors that were outside of the issue. But they had evidence. I could live in this house, but I can't because of the ordinance. This is a place where I could live, but for the ordinance. Correct, Your Honor. I believe that the homelessness question isn't about whether they can live at that house or that location, but whether they can live at any location. And there was evidence extensively throughout the record that there were opportunities for them to find housing in compliant areas. They were not living at any location. And they say, this is a place I found, but I couldn't live there but for the ordinance. Anyway, so you think that finding of fact was fine by the judge? I do, Your Honor, yes. Do you know, I'm just curious, the cause of death of John Doe No. 4 and John Doe No. 7? I'm unaware of that fact, Your Honor. I believe that would be, for the plaintiffs, I believe that, at least for John Doe No. 7, and this is pure speculation, but I know that he had cardiac issues. So I can only posit that it would be related to that. Let me wind up with this. So in your view of the world, could the plaintiffs bring an as-applied challenge now? As to which of the plaintiffs? Five and six. I think, Your Honor, there comes a point in time in which there has to be finality to litigation. And when a party could bring a case, when a party could bring a claim that they chose not to bring, there's a question as to whether or not they're collaterally stopped or whether res judicata applies to their ability to bring new claims on the same set of facts in a subsequent litigation. Well, I mean, the years go by, right? The years go by. They're on the street. I mean, you're saying they could never bring another as-applied challenge? I don't think that anyone would be... No, Your Honor, I don't think anyone would be permanently foreclosed from bringing an as-applied challenge. I think it would be based on whether or not a new cause of action arose based on a unique enforcement action or a unique circumstance that wasn't available to the plaintiffs at the time of this action. How much time needs to pass before they can bring a new as-applied challenge? That, I think, would have to be figured out with pleading on the part of the plaintiffs. The world according to you, how much time would have to pass? I think there would have to be unique circumstances that weren't available or that weren't giving rise to a cause of action at the time that the plaintiffs brought this action that could have been brought at the time that they joined this lawsuit. Well, so, you know, say it's tougher to have been on the street for four months than for two months. Is that a change in circumstances that would allow a new as-applied challenge? Absent further information, I don't know the specifics. If it's the same condition, if it's the same essential circumstances relating to the plaintiffs that were relevant and apparent in the initial action, I don't think they'd have a new claim. But if there were a change in circumstances that made the ordinance in the plaintiff's view more excessive given these new situations, then that could be something that could potentially be raised. I don't know the ultimate success of that claim. But, you know, it's something that they could argue. But anything that would approximate a claim that could have been brought at the time this litigation arose, I think we would be arguing that they were stopped from being able to bring those claims now. And I do want to focus on one of the statements that was made by my opposing counsel in his argument, Your Honors, where he indicated that it was the county that focused on these plaintiffs and that we had essentially laser focus on these plaintiffs. I want to emphasize the fact that it wasn't the county who focused on these plaintiffs. It was the plaintiffs who offered up these individuals as witnesses in their case to prove their facial challenge. They were put on a witness list. They were listed in discovery as relevant witnesses. The county just did its due diligence in deposing them, in getting information that could relate to their potential testimony. The plaintiffs were the ones that indicated we intend to put these people on trial to have them testify in support of our facial challenge. And we did what any reasonable due diligence would have required in deposing those individuals and cross-examining them. It wasn't us who invited these plaintiffs. We did not call them as witnesses. It was the plaintiffs who made that decision. And I think in closing, Your Honors, I would just emphasize the fact that the plaintiffs here have argued that the district court has abused its discretion by not granting them this last-minute release. I don't think it's possible for there to be reversible error for the court to simply take the attorneys for the plaintiffs at their word. Every single time throughout this litigation they indicated they did not want an as-applied challenge. The district court asked them expressly if they wanted that because it would have altered the district court's analysis. They said no. I believe that they should live with that decision. And I think that this court should consider the message that a reversal would send. Going forward, defendants must now prepare for the unexpected. They have to treat any effort by a composing counsel to streamline and narrow issues for trial with skepticism and doubt because it might be used against you at a later point in time. And in short, Your Honors, trial by ambush would no longer be a tactic that's rightfully rebuked. It would now be effectively encouraged. We ask you to affirm. Good morning again. This is Daniel Tilley for plaintiffs. I'll make this very short. A couple of things. On surprise, you can't be surprised by something that you sought. And I don't want to beat a dead horse, but as I said before, they needed to and sought to defeat what would constitute an as-applied challenge regardless of whether there was actually an as-applied challenge in the case. As to individual relief, the district judge, of course, said both at trial and in the opinion that he was considering or would consider giving individual relief in an as-applied context. So it's just not true that his analysis with respect to those individuals would have changed to that extent at least. Also, the relief is clear in the extent that the relief provided could be to those individual plaintiffs only. And finally, as to change in circumstances, of course, we're now in COVID time. Dose 6 has lost his job, so any income he was getting from that is not there. And I just, in any event, don't think that estoppel would bar them from bringing a separate as-applied challenge. But I just, of course, wanted to mention that obvious change in circumstances that is affecting so many of us today. That's all I have to say. If there are no further questions, I am concluding. I have one question. This is Judge Newsom. So on the AFSCME issue, what do you say in response, I've now found it, to your adversary's notation that in AFSCME, we do cite Judge Boggs' opinion in the Stupak-Thrall case to say, unless a plaintiff expressly disavows an as-applied challenge, the complaint that a regulation is invalid should be construed as possible as an as-applied challenge. And he says that, at least by implication, we have said where possibly as here, the plaintiff has expressly disavowed an as-applied challenge, you don't get the benefit of the AFSCME rule. I think that, well, that citation follows the sentence, courts construe a plaintiff's challenge as possible to be as applied. And so I think that answers my contention that if it's unclear in the complaint, but then plaintiffs disavow a challenge, that you construe it as possible to be as applied. But here it doesn't change the standard for Rule 15b-2. And as I've said before, and again, we did not say until after the close of discovery that it was a facial challenge. I don't want to suggest anything that we didn't say before. Obviously, we did years before the filing of the Second Amendment complaint. But again, Rule 15b-2 still permits us, we contend, to the relief requested. So, but do you, just as a matter of fact, the record in this case, do you think it's fair to say that you expressly disavowed an as-applied challenge? We certainly did at some point. The question is how you consider the effect of that. So, of course, we expressly disavowed it at times. We did not do so during the relevant time, which is between the filing of the Second Amendment complaint and the close of discovery of the Second Amendment complaint. But, of course, we don't deny. Time has expired. Time has expired. And just so I'm clear, not even in the calendar call that I quoted to you earlier, which comes after the Second Amendment complaint? You're correct about that. And I've said this before, but just so it's clear, you know, the question in Rule 15b-2, it's all tied to prejudice. And the articulation, particularly specific articulable prejudice, and we address the four assertions of prejudice that they explained for the first time in their appellate brief. And so once prejudice is resolved, we think the motion should have been granted. Okay. Very well. Thank you. Thank you. Thank you, Mr. Tilley. Mr. Tilley, do you do trial work as well as appellate work? Yes, Your Honor. Do you have trouble with court reporters telling you to slow down? In every trial and every hearing, yes. I was just guessing. I was just guessing. Well, thank you for your argument today and you as well, Mr. Valdez. Thank you.